IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–01119–MDB

FABIOLA MUNOZ, and
ACCESS 4 ALL, INC., a Florida nonprofit corporation,

    Plaintiffs,

v.

G S I ENTERPRISES, INC., a Colorado corporation,

    Defendants.

## ORDER

This matter is before the Court on Defendant G S I Enterprises, Inc.'s Motion for Summary Judgment. (["Motion"], Doc. No. 40.) Plaintiffs have responded and filed a Cross-Motion for Summary Judgment. (["Response" or "Cross-Motion"], Doc. No. 47.) Defendant has replied in support of its Motion. (["Reply"], Doc. No. 51.) Additionally, Defendant filed a Motion for Leave to File Additional Exhibit in Support of Defendant G S I Enterprises, Inc.'s Motion for Summary Judgment. (["Motion to Supplement"], Doc. No. 52.) Plaintiffs have responded in opposition, and Defendant has replied. (Doc. Nos. 54; 56.) The Court held a Motion Hearing on all pending motions on September 19, 2023. After considering the Motions, briefing, the parties' oral argument, and applicable law, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 40) is **GRANTED**, Plaintiffs' Cross-Motion for Summary

Judgment (Doc. No. 47) is **DENIED as moot**, and Defendant's Motion to Supplement (Doc. No. 52) is **DENIED as moot**.

## STATEMENT OF THE CASE

**I.     Claim for Relief**

This case arises from Ms. Munoz's April 16, 2022, patronage of Cottonwood Square, a Colorado Springs shopping center owned and operated by Defendant GSI Enterprises, Inc ["GSI"]. (Doc. No. 1 at 4.) Ms. Munoz is an individual with disabilities as defined by the Americans with Disabilities Act ["ADA"]; she describes herself as paraplegic and uses a wheelchair to ambulate. (*Id.* at 3–4.) Ms. Munoz is a citizen of Florida and a member of Access 4 All, Inc., a Florida "a non-profit corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation." (*Id.* at 1, 2, 3.)

In her Complaint, filed May 5, 2022, Ms. Munoz alleges that she patronized Taste of Philly and Piglatin Cocina, restaurants at Cottonwood Square, during her April 2022 visit to Colorado Springs. (*Id.* at 7–12.) Ms. Munoz alleges that she discovered several ADA violations at the exterior of Cottonwood Square and within Taste of Philly and Piglatin Cocina, including insufficient and inadequate accessible parking spaces, inadequate curb ramps and access routes, an insufficient number of accessible dining tables, inaccessible payment counters, excessive slopes and level changes, and several restroom-related violations. (*Id.* at 5–9.) Ms. Munoz represents that she is a "frequent traveler to the Colorado Springs area," "regularly conducts

business[1] pertaining to Access 4 All, Inc" in the area, and intended to return to the property on or about August 1, 2022, and November 1, 2022. (*Id.* at 4.)

Based on these allegations, Plaintiffs seek (1) a declaratory judgment that Defendant is in violation of the ADA; (2) an injunction against Defendant and order that Defendant "make all readily achievable alterations to the facility" or "make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA" and "make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities" so that "no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services"; and (3) attorneys costs and fees.[2] (*Id.* at 12–13.)

## II.  Defendant's Statement of Undisputed Material Facts and Current Position

In its Statement of Undisputed Material Facts, Defendant admits that it owns and operates the property located at 2805-2873 Dublin Blvd and 6451-6459 Union Blvd, Colorado Springs, CO 80918. (*Id.* at ¶ 2.) Defendant contends that it has attempted to resolve the fourteen alleged violations, and that at the time of the Motion its expert opined that "all of the repairs related to Taste of Philly [had] been repaired," "4 of the 9" alleged violations in Piglatin Cocina had been repaired, with plans to repair the remaining violations within two to three weeks, and "2 of the 5"

---

[1] "Business" ostensibly refers to advocacy activities and litigation on behalf of Access 4 All. (*See* Motion Hearing 1:21:05–1:21:20 (Sept. 19, 2023).)

[2] The Complaint also includes a claim under the Colorado Anti-Discrimination Act. (Doc. No. 1 at 13–15); *see* C.S.R. § 24-34-601 *et seq*. On January 24, 2023, the parties agreed to the dismissal of that claim with prejudice. (Doc. No. 31.)

alleged exterior violations had been repaired, with plans to repair the remaining by the end of summer 2023. (*Id.* ¶¶ 7–10.) Defendant represents that "supply chain delays and shortages, serious medical complications suffered by GSI's owner, the financial implications of several exterior repairs, and the winter weather in Colorado" impeded its ability to complete repairs on all alleged violations by the dispositive motion deadline. (*Id.* at ¶ 11.) Then, during the Motion Hearing, Defendant estimated that $95,000 in repairs had been completed, but acknowledged that certain exterior repairs had not been completed by the end of summer 2023 and would not be completed until spring 2024 "at the earliest." (Motion Hearing 1:08:10–1:10:25 (Sept. 19, 2023).)

### III.   Plaintiffs' Statement of Undisputed Material Facts and Current Position

For their part, Plaintiffs contend that Cottonwood Square continues to be non-compliant with the ADA on the exterior and interior. (Doc. No. 47 ¶ 17.) Specifically, they allege that, prior to their Response and Cross-Motion, Plaintiffs' expert reinspected Cottonwood Square on June 5, 2023. (Doc. No. 47 Ex. A.) Plaintiffs' expert concluded that the vast majority of alleged violations—both on the exterior *and* interior of the property—had not been redressed. (*Id.* at 57–58.)

### IV.   Ms. Munoz's Affidavit

Ms. Munoz submits into the record a signed affidavit. (*Id.* Ex. C.) She avers that she personally visited the Cottonwood Square shopping center, patronizing Piglatin Cocina and Taste of Philly, "on or about ... September 4, 2021, April 16, 2022, November 4, 2022, January 25, 2023, and June 5, 2023." (*Id.* Ex. C at ¶ 9–10.) In conjunction with her statements, Plaintiff submits photos of receipts from Piglatin Cocina dated April 16, 2022, and June 5, 2023. (*Id.* Ex.

4

C.) She also submits a screenshot of a flight itinerary showing travel between Miami and Denver September 1–8, 2021, a screenshot of a booking at the Cheyenne Mountain Resort in Colorado Springs for November 4–5, 2022, photos of receipts from a booking at the Double Tree Hotel Colorado Springs (as well as receipts from the bar and restaurant at the hotel) from January 26 to 27, 2023, and screenshots of a flight itinerary between Denver and Miami on January 25–29, 2023. (*Id.* Ex. C.) Ms. Munoz also submits several photos from her alleged June 2023 visit to Cottonwood Square. (*Id.* Ex. C.)

Ms. Munoz further avers that she will be returning to Colorado Springs from September 24–26. (*Id.* Ex. C ¶ 17.) In support of this representation, she submits a screenshot showing a booking at the Embassy Suites in Colorado Springs for September 24–26. (*Id.* Ex. C.) Ms. Munoz says that she travels to Colorado "several times per year," usually visiting the "Denver, Colorado Springs, and Pueblo areas." (*Id.* Ex. C. at ¶ 16.)

## V.     Summary Judgment Arguments

Defendant's primary argument is that Plaintiffs lack standing to pursue their ADA claim. (Doc. No. 40 at 5–13.) In the alternative, Defendant argues that, even if Plaintiffs do have standing, the case is now moot and must be dismissed as Defendant contends it has remedied nearly all alleged violations and has concrete plans to remedy other violations. (*Id.* at 15–18.) Defendant also argues that any remaining remediation is not "readily achievable" under the ADA, and thus, Defendant is entitled to summary judgment. (*Id.* at 14–15.)

In their Response and Cross-Motion, Plaintiffs contend "the property's condition remains largely unchanged" and "non-compliance continues to exist in most areas of the Defendant's property," entitling Plaintiffs to summary judgment as it relates to the alleged remaining

5

violations. (Doc. No. 47 at 6–10.) Plaintiffs also contend they have standing to pursue this action, and that the repairs are readily achievable under the ADA. (*Id.* at 4–6, 7.)

## LEGAL STANDARD

### I.     Fed. R. Civ. P. 56

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251–52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477

6

U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

"To prevail at summary judgment on standing grounds, the defendant must show that the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing." *Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007). For their part, "[a]s the party seeking to invoke federal jurisdiction, the plaintiff ... has the burden of establishing each of the[ ] three elements of Article III standing." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "[A] plaintiff may not rest upon the allegations of injury, causation, and redressability in its complaint, but must respond, with affidavits or as otherwise provided in the rule, with facts demonstrating a genuine issue for trial." *Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1269 (D. Colo. 2010); *Nova Health Sys.*, 416 F.3d at 1154 ("At the summary judgment stage, the plaintiff must set forth by affidavit or other evidence specific facts that, if taken as true, establish each of these elements.").

## ANALYSIS

At the outset, it is highly unlikely that either side would be entitled to summary judgment on the merits.[3] This is because significant factual issues remain undetermined. Indeed, the parties' experts could not be further apart as to the property's current status under the ADA. (*See* Doc. No. 40 Ex F; 47 Ex. A.) Further, the cost and burden of the remaining repairs is unclear. Though Plaintiffs' expert provided certain estimates in his original inspection report, the expert did not provide a basis for these estimates and their accuracy is disputed by the parties. (*See* Doc. No. 40 Ex. A; Motion Hearing 1:39:00–1:41:00 (Sept. 19, 2023).) Summary judgment is not appropriate where material facts remain in dispute. However, the Court declines to analyze this issue in depth because Plaintiffs lack standing to pursue this action.

I.   **Standing – Ms. Munoz**

A federal court has an obligation to assure itself that it has the subject matter jurisdiction to hear a lawsuit. As applied here, that jurisdictional inquiry includes affirming that Plaintiffs have standing. *Laufer v. Sub*, No. 20-cv-02555-WJM-MEH, 2022 WL 540655, at *2 (D. Colo. Feb. 23, 2022), *recommendation adopted*, 2022 WL 1468117 (May 10, 2022).

To have standing, a plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (citations omitted). In its Motion, Defendant argues that Ms. Munoz has failed to establish she suffered an "injury in fact."

---

[3] For Defendant, on the grounds of mootness or that the repairs are not readily achievable, and for Plaintiffs, on the grounds of ongoing violations.

8

"Injury in fact" requires that a plaintiff has suffered "an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. For an injury to be particularized, "the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1. To be concrete, "an injury must be 'real' rather than 'abstract.'" *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021). In the ADA context, courts consider whether an injury is "imminent" and meets the "injury in fact" prong by applying a four-prong test that considers: (1) the proximity of a defendant's business to a plaintiff's residence, (2) a plaintiff's past patronage of a defendant's business, (3) the definitiveness of a plaintiff's plans to return, and (4) a plaintiff's frequency of travel near a defendant. *Brito v. Denver Convention Ctr. Hotel Auth.*, No. 20-CV-02719-PAB-KMT, 2021 WL 4149619, at *4 (D. Colo. Sept. 13, 2021).[4] This four-prong test is reviewed in its totality. Plaintiffs need not demonstrate that each factor supports standing, nor does Defendant need to show each factor weighs against standing.

### A. Cottonwood Square's Proximity to Plaintiff's Residence

Ms. Munoz is domiciled in Florida and therefore lives a significant distance from Cottonwood Square. "As the distance between the plaintiff's residence and the public accommodation increases, the likelihood of future harm decreases. When the distance between

---

[4] Similarly, in these types of cases, some courts have employed an "Intention Test" to "analyze whether a plaintiff intends to use the complained of public accommodation in the future." *Id.* at *6. The intention test is largely similar in substance to this District's four-prong test, asking simply whether the plaintiff has "a concrete, *present* plan" to use the accommodation in question. *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004) (emphasis in original) (finding "an intent to use buses 'several times per year' suggests a concrete, present plan" to use the bus system in the future); *see Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (finding that intention to return to a store in a mall "at least six times per year" established an injury in fact; *but see Tandy*, 380 F.3d at 1284 (saying that "[s]peculative, 'someday' intentions do not support standing to seek prospective relief). Defendant contends Ms. Munoz failed to establish standing under either test.

the two is significant, especially if it is in excess of 100 miles, courts have consistently held that it weighs against finding a reasonable likelihood of future harm." *See Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d 1042, 1045 (C.D. Cal. 2005). Indeed, courts implementing this test have found that the total distance cuts *against* a finding of standing when that distance is just 280 miles, or the miles between California and Colorado, or—as particularly relevant here—the miles between Florida and Colorado. *See Steven Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004); *Meggs v. Dillon Companies, LLC*, No. 21-CV-02030-NYW, 2022 WL 4079337, at *8 (D. Colo. Sept. 6, 2022); *Cuesta v. SMT Holdings LLC*, No. 21-CV-03094-NYW, 2022 WL 15516990, at *7 (D. Colo. Oct. 27, 2022).

Additionally, Cottonwood Square is not a hotel but rather a strip mall; thus, there's no implicit assumption in Plaintiff's favor. *Compare Cohan v. Aurora Hosp., LLC*, No. 19-cv-00784-PAB-NRN, 2020 WL 1322866, at *3 (D. Colo. Mar. 20, 2020) ("Given that the public accommodation in this case is a hotel which is almost always used only when one is far away from his residence, the [proximity] factor should be judged carefully."), *with Cuesta*, 2022 WL 15516990, at *7 ("A brewery in another state is not such a public accommodation that one generally would use so far away from one's residence."). Thus, the proximity factor cuts against standing and in favor of Defendant's Motion.

### B. Ms. Munoz's Past Patronage of Cottonwood Square

In their Complaint, Plaintiffs allege Ms. Munoz "visited the property on multiple occasions," her most recent being April 16, 2022. (Doc. No. 1 at 4.) In support of that assertion, Ms. Munoz submits a Piglatin Cocina receipt from April 16, 2022, a little over a week before she filed her Complaint. (Doc. No. 47 Ex. C at 62.)

Ms. Munoz also states she visited the property on or about September 4, 2021. (Doc. No. 47 Ex. C.) In support of that assertion, she attaches a screenshot of a flight itinerary showing travel between Miami and Denver September 1–8, 2021. A screenshot of a flight itinerary showing travel between Miami and Denver is not proof of actual travel to Denver, and even if it were, it is not proof of a visit to Colorado Springs—much less a visit to a particular establishment in Colorado Springs. Thus, Ms. Munoz's alleged evidence in support of prior visits is scant at best. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

A plaintiff is not required to visit an out-of-compliance store more than once to have standing. *See Colo. Cross*, 765 F.3d at 1208–13; *see also Tandy*, 380 F.3d at 1284–89. However, the mere existence of one past patronage alone does not confer standing unless a plaintiff can establish a "reasonable likelihood that [she or he] is likely to return." *Judy v. Pingue*, No. 2:08-cv-859, 2009 WL 4261389, at *4 (S.D. Ohio Nov. 25, 2009) (emphasis added); *see Bernstein v. City of New York*, 621 F. App'x 56, 58–59 (2d Cir. 2015) ("[P]ast frequency of visits is a key factor in determining intent to return."); *Molski*, 385 F. Supp. at 1045 ("[T]he lack of a history of past patronage seems to negate the possibility of future injury at that particular location."). Ms. Munoz has not presented evidence of her alleged September 2021 visit to the actual establishment, much less of frequent past visits to the property in question. The Court finds this factor weighs against standing.

**C.  Ms. Munoz's Plans to Return to Cottonwood Square**

11

"ADA plaintiffs seeking injunctive relief must demonstrate that they themselves face a real and immediate threat of future harm." *Molski*, 385 F. Supp. 2d at 1046. Standing cannot be established "by [a plaintiff's] mere profession of an intent, someday, to return." *Lujan*, 504 U.S. at 564 n. 2. Instead, a plaintiff must describe "concrete plans" or specify "when some day will be." *Id.* at 564. Further, injury in fact "must be supported with...the manner and degree of evidence required at the [pertinent], successive stages of litigation." *Id.* at 561. A plaintiff "must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n.5 (10th Cir. 1999). Additionally, "[t]he requirement that plaintiff submit evidence to support [her] professed intent to return to the [property] is especially important where, as here, plaintiff has an extensive litigation history relating to ADA claims. *See Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164–67 (C.D. Cal. 2005); *Brother*, 331 F. Supp. 2d at 1374 (stating that "in view of his extensive litigation history, [plaintiff's] professed intent to return to the property is insufficient").

Here, the Complaint asserts Ms. Munoz "intends to return to the property on or about August 1, 2022, and on or about November 1, 2022. (Doc. No. 1 at 4.) Then in her affidavit, Ms. Munoz avers that she visited the property on or about November 4, 2022, January 25, 2023, and June 5, 2023. (Doc. No. 47 Ex. C.) She further states that her "next trip to Colorado Springs will take place during September, 2023, when [she] will be staying at the Hilton Embassy Suites…for two nights from the 24th to the 26th." (Doc. No. 47 Ex C ¶¶ 17.) She attaches a screenshot of her hotel booking. (*Id.* Ex. C.) She says, "Cottonwood Square is located conveniently nearby within a few miles. I may visit prior to that but do not have any other concrete plans at the moment. I

12

will continue to visit Colorado Springs several times per year as I have consistently done for the past several years." (*Id.* Ex. C ¶ 17). The Court will address each of these purported visits in turn.

*August 2022 Visit:* Ms. Munoz has implicitly admitted that she did not return to the property in August 2022. (*Compare* Doc. No. 1 at 4, *with* Doc. No. 47 Ex. C.)

*November 2022 Visit:* Ms. Munoz does not submit receipts for the alleged November 2022 visit to the establishment at issue. Instead, she submits receipts or itineraries of Colorado Springs-area hotels. (*Id*. Ex. C.) Further, Plaintiffs have not corroborated Ms. Munoz's purported November 2022 visit with other evidence, even though the case was well underway by the time of that visit. (*See* Doc. No. 47 Ex. C); *Thomas v. U.S. Bureau of Prisons*, 282 F. App'x 701, 704 (10th Cir. 2008) ("[C]onclusory and self-serving statements, even if presented in an affidavit, are insufficient to create a genuine issue of fact to survive summary judgment."). As to the hotel receipts—and assuming for purposes of this Motion that Ms. Munoz did indeed stay in Colorado Springs—proof of a Colorado Springs stay is not proof of patronage at a nearby restaurant. Colorado Springs is a large city with hundreds of establishments, many tourist attractions, and many places to dine. That Ms. Munoz stayed at a hotel nearby is not evidence of a visit to the property in question.

*January 2023 Visit:* As with the purported November visit, Ms. Munoz does not submit receipts or other proof of her visit to the particular establishment at issue.

*June 2023 Visit:* Ms. Munoz submits a receipt and photos from Piglatin Cocina for a June 2023 visit. (*Id*. Ex. C.) However, the Court notes that Ms. Munoz's June 5, 2023, visit was not a planned visit according to the Complaint. Instead the June, 2023 visit came *after* Defendant challenged standing, and *before* Plaintiffs responded to that challenge (notably, Plaintiffs

13

requested multiple extensions of their time to respond to the standing challenge). (*Id.*; *see* Doc. Nos. 40; 41, 42, 43, 44, 45, 46.) Thus, the Court views the June, 2023 visit with some skepticism when considering it in the broader context of litigation, and Defendant's standing challenge.

*September 2023 Visit*: As noted above, Ms. Munoz's affidavit states that her "next trip to Colorado Springs will take place during September, 2023, when [she] will be staying at the Hilton Embassy Suites…for two nights from the 24th to the 26th." (Doc. No. 47 Ex C ¶¶ 17.) However, nowhere in the paragraph referencing her September visit, does Ms. Munoz state she *will* visit the subject property, much less describe a concrete plan for visiting the property and dining there. The closest Ms. Munoz comes to stating she will visit the property in September 2023, is stating that she has enjoyed the food at Piglatin Cocina and "will continue to eat their food every time [she is] in Colorado Springs." (*Id.* Ex. C ¶ 19). But stating she will stay in a nearby hotel and eat certain food (which presumably can be delivered) is not the same as describing a concrete plan to visit the subject establishment and dine there.[5]

Considering the evidence in the record, the briefing, and the argument made during the Motion Hearing, the Court finds this factor weighs against standing. *See generally Access 4 All Inc. v. Corsa Inv.*, LLC, No. 21-CV-02788-MEH, 2022 WL 4767570, at *4 (D. Colo. Oct. 3, 2022) ("The evidentiary record simply does not confirm that Plaintiff Munoz actually returned to the property, and Plaintiff herself provides no information or explanation to lend credibility to her claimed desire to return to this specific property. Not only is the record deficient in its own

---

[5] The Court notes that Ms. Munoz was physically present during the September Motion Hearing. However, the litigation itself—and related proceedings—will not be factored into this Court's jurisdictional analysis.

right, but she falls far short of evidentiary burden needed for someone with an extensive ADA litigation history." (citations omitted)).

### D. Ms. Munoz's Frequency of Travel Near Cottonwood Square

Finally, Plaintiffs allege that Ms. Munoz is a "frequent traveler" to Colorado and the Colorado Springs area. (Doc. No. 1 at 4.) In her affidavit, Plaintiff says she travels to CO "several times per year" and has friends in Denver, Colorado Springs, and Pueblo. (Doc. No 47 Ex C.) Plaintiff also submits flight and hotel receipts showing multiple trips to Colorado over the last few years. (*Id*.)

The Court's research has not uncovered a specific frequency by which this prong should be tested. Ms. Munoz's Florida domicile inherently cuts against standing, but she has submitted evidence that she traveled to Colorado, and ostensibly Colorado Springs, multiple times over the last few years. Additionally, the Complaint and affidavit make specific references to enjoying the restaurants in question, which would seem to make future patronage of them somewhat more likely. Still, the extent to which Plaintiff is "near" the property in question when she is in Colorado is not clear. Further, other courts considering this question have found that sweeping statements about traveling to a State or city are not particularly useful in establishing that one is frequently near a specific business. *See Cuesta*, 2022 WL 15516990, at *8 (finding that Plaintiff's declaration that "spend[s] significant amounts of time in Colorado, most often in the Denver area" did not "sufficiently establish [he] frequently travels near" the specific business in question). At best, this factor is neutral.

\*\*\*

With three factors weighing against a finding of standing, and one factor neutral, the Court finds Ms. Munoz's affidavit, and Plaintiffs' evidence generally, cannot establish the elements of standing. Said another way, Defendant has demonstrated that the record is devoid of evidence raising a genuine issue of material fact that might allow Plaintiffs to meet their burden of proof as to standing. *Day*, 500 F.3d at 1132.

## II.     Standing – Access 4 All

Defendant contends that to the extent Ms. Munoz lacks standing, Access 4 All cannot maintain representational standing in this case. The Court agrees.

"[W]here the plaintiff is an organization, the standing requirements of Article III can be satisfied in two ways. Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Here, Access 4 All asserts standing based on the latter approach, also known as "representational standing." Access 4 All does not claim any injury of its own. (*See generally* Doc. No. 1.) "To invoke [representational standing], an organization must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Id.* (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

Here, Access 4 All's representational standing fails on the first prong, as the Court has determined that Ms. Munoz lacks individual standing to pursue this action. Plaintiffs have not

16

presented evidence suggesting any other Access 4 All member has standing. Accordingly, the Court finds Access 4 All lacks standing.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 40) is **GRANTED** and Plaintiffs' Complaint is **DISMISSED without prejudice** due to the Court's lack of jurisdiction over this matter. It is further

**ORDERED** that Plaintiffs' Cross Motion for Summary Judgment (Doc. No. 47 is **DENIED as moot**. It is further

**ORDERED** that Defendant's Motion to Supplement (Doc. No. 52) is **DENIED as moot**. It is further

**ORDERED** that the Clerk of Court is directed to close this case.

Dated this 12th day of October, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge